187 So.2d 575

**Homer BIVENS**

v.

**STATE.**

**8 Div. 13.**

Court of Appeals of Alabama.

June 7, 1966.

Robt. Straub, Decatur, and R. E. Proctor, Moulton, for appellant.

Richmond M. Flowers, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This is an appeal from a conviction of robbery with a penitentiary sentence of ten years.

Mr. Graham Dorsey testified he operated a truck stop in Lawrence County. About midnight of August 20, 1963, defendant and one Ray Cottingham drove into the station in a 1956 model green and white Ford automobile. The defendant was driving. He got out of the car and asked witness to check the oil, witness put two quarts of oil in the motor and defendant stood around for awhile and then said he wanted to buy some gasoline and cigarettes. He moved the car from the well lighted area to the high test pump in a less lighted area. After the men started the motor Mr. Dorsey went around to collect his money and defendant was holding a pistol on him and said, "Give me your money." After defendant had told him that three times, he

gave him his money, approximately $80.00. On cross examination he testified he had never seen defendant before that night and had seen him only on one other occasion, at the jail, since the alleged robbery. In answer to questions by defense counsel the witness said he did not tell one Leo Garrett that he could not identify the person who robbed him. The truck stop is between two and three miles west of the Morgan County line, and a quarter of a mile from the community known as Fish Pond.

Mr. Dawson Cottingham, a witness for the State, testified he lived two miles north of the Fish Pond station. On the night Mr. Dorsey was alleged to have been robbed the defendant ate supper at his house in company with his son, Ray Cottingham. The two boys left his home shortly after dark to get some cigarettes. The defendant was driving a white and green colored Ford. The boys spent a night or two at Ray's sister's house on the Trinity Road in the edge of Lawrence County and he did not see his son again until Saturday.

For the defendant, Leo Garrett testified he was nineteen years old, lived at Hillsboro and was a first cousin to defendant. Approximately a week after the robbery was supposed to have taken place he was in Mr. Dorsey's place of business. At that time Mr. Dorsey told him he would not recognize the person who held him up.

The defense was an alibi. Defendant's father testified he lived in the Barton community, R. 3 Cherokee, in Colbert County. His wife owned a grey and light cream colored 1956 Ford automobile. On August 20, 1963, his son, Homer, had the car but he brought it home about eleven o'clock that night. At that time his son was in the company of one Gene George. Both boys were drinking heavily. They left his house about 11:30 in a black automobile.

Pride Eugene George testified that about 10:30 on the night of August 20, he saw the defendant at McCorkel's Drive-in, located at the intersection of the Tuscumbia—Decatur—Russellville Highways. Defendant was drinking. The witness drove him home in a 1956 grey and white Ford. Two other boys followed them in another car. After they arrived at Biven's home, the four of them, witness, defendant one Clark Griffin and Dale Whalley, got in the other car and drove to the Tennessee River in Colbert County, arriving there about 11:20. There they met one Jackie Burrow who was camping and they stayed around there until around five the next morning.

In rebuttal, the State introduced testimony by Melton Letson that he saw appellant and Ray Cottingham together at the home of Mr. Lawrence Johnson in Lawrence County on the day before Mr. Dorsey was alleged to have been robbed that night. They were in a grey and white '56 Ford. He had never seen the defendant before that day and has not seen him since that time.

Jimmy Letson testified that on Monday night prior to the time the filling station was alleged to have been robbed a boy he judged to be defendant came to his home with Ray Cottingham to get Watermelons. He lives a mile north of Hillsboro.

Ray Cottingham testified he is twenty-six years of age and lives at Hillsboro, Alabama, with his father. He testified he and the defendant were together from Monday, August 19th, about 3 o'clock in the afternoon, until Wednesday about noon. They were traveling in a 1956 Ford which the witness thought belonged to the defendant. About 5 o'clock Wednesday, the 21st of August, the morning after the station was alleged to have been robbed, he was in a little restaurant near Florence, with the defendant. He would not testify defendant was the man who robbed Mr. Dorsey. He further testified he was on probation for the same crime.

The conflict in the evidence presented a question for the jury's determination, and was sufficient to sustain the verdict and support the judgment of conviction. Cochran v. State, 33 Ala.App. 121, 31 So.2d 94.

■ The record shows the following during the solicitor's closing argument to the jury:

"MR. PROCTOR: If the Court please, we object to this line of argument, 'The failure of the witness to take the stand.' We think it is improper argument.

"MR. HUNDLEY: These would be his alibi witnesses under the testimony, Your Honor, who would be necessarily hostile.

"MR. PROCTOR: They are just as available to him as to us.

"THE COURT: I believe I will overrule it.

"MR. PROCTOR: We reserve an exception.

"THE COURT: Because of the alleged interest of the witness.

"Mr. Pettus: Yes, sir, hostile to the state.

"THE COURT: Yes, sir, I so rule."

Defense counsel argues in brief that the solicitor's comment had reference to the failure of defendant to call to the stand certain alibi witnesses, and that such argument requires a reversal of this cause, citing Brock v. State, 123 Ala. 24, 26 So. 329; Jackson v. State, 193 Ala. 36, 69 So. 130; Tanner v. State, 37 Ala.App. 256, 66 So.2d 827, reversed on another point, 259 Ala. 306, 66 So.2d 836.

We agree with the statement in the brief of the Attorney General that the objection which appears in the record is meager and meaningless and without the aid of appellant's brief it would be impossible to know what was meant by it. A reading of the cases cited by appellant show that the argument of the solicitor to which objection was made was set out in sufficient detail to enable the reviewing court to pass upon the objection. Brannan v. State, 16 Ala. App. 259, 76 So. 991, certiorari denied, 201 Ala. 695, 77 So. 999.

At the conclusion of the court's oral charge the following appears:

"MR. PROCTOR: The defendant further excepts to the failure of the court charging the jury to the effect that the failure of the defendant to take the witness stand in this case is not to be held against him and is not to be considered by them in the consideration of their verdict.

"THE COURT: Well, that is true. That is a correct statement of the law."

In Patterson v. State, 37 Ala.App. 161, 66 So.2d 191, certiorari denied 259 Ala. 152, 66 So.2d 194, the court said:

"There are numerous authorities which hold that a reviewable question is not presented by an exception to the court's omission or failure to charge on a legal proposition. A party's remedy under such circumstances is to request a written instruction. Davis v. State, 246 Ala. 101; 19 So.2d 358; Long v. State, 24 Ala.App. 571, 139 So. 113."

We find no reversible error in the record. The judgment is affirmed.

Affirmed.